FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 MAR 29 PM 2:34

HRB GREEN RESOURCES LLC
(D/B/A H&R BLOCK),

  Plaintiff,

vs.

CASE NO.: 6:18-cv-478-0rl-40TBS

SHERLYN LEONARD,

  Defendant.
_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff HRB Green Resources LLC (d/b/a H&R Block) ("H&R Block") files this Verified Complaint for Injunctive Relief against Defendant Sherlyn Leonard ("Leonard"), and alleges as follows:

## INTRODUCTION

This action involves a former H&R Block tax professional who sold her tax preparation business to H&R Block and then breached restrictive covenants contained in the asset purchase agreement and in her employment agreement with H&R Block. In July 2016, Leonard sold her tax preparation business, along with her client lists and customer goodwill, to H&R Block and, as part of the transaction, H&R Block subsequently employed Leonard in its Orlando (FL) District as a tax professional. Leonard signed agreements with H&R Block to effectuate the sale of her business and begin her employment with H&R Block. These agreements contained, among other things, restrictive covenants prohibiting Leonard from competing with H&R Block within a 50-mile radius of Orlando city limits, and from soliciting and servicing H&R Block clients, including the clients she sold to H&R Block.

PD.23433527.1

During Leonard's employment with H&R Block, H&R Block provided Leonard with access to its most sensitive information about H&R Block's clients and business operations. These confidential, proprietary, and trade secret materials include customer lists, detailed information about its clients, and information about H&R Block's methods, training, pricing, and marketing strategies. Notwithstanding Leonard's contractual and common law duties to H&R Block, Leonard has embarked on a course of improper activities in violation of her agreements with H&R Block.

Less than one year after selling her business to H&R Block, Leonard founded and began working on behalf of a tax preparation business named All In 1 Financial Solutions, Inc. ("All In One Tax") – a direct competitor of H&R Block operating in Orlando, Florida. Leonard is actively competing against H&R Block and using H&R Block's confidential, proprietary, and trade secret information to solicit H&R Block clients, including clients she sold to H&R Block in 2016. Leonard's contractual breaches, including her operation of a competitive business and her use of H&R Block's confidential and proprietary information, are causing immediate and irreparable injury to H&R Block and depriving H&R Block of its opportunities to service its clients.

H&R Block seeks injunctive relief to enjoin Leonard's unlawful conduct. Time is of the essence, as the 2018 tax season is fully underway and nearing its peak. The specific details surrounding Leonard's improper acts are detailed below.

## PARTIES

1. Plaintiff H&R Block is a Delaware limited liability company with its principal place of business in Kansas City, Missouri.

2. On information and belief, Defendant Leonard is a resident of Orlando, Orange County, Florida.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 (diversity of citizenship) since there is complete diversity and the matter in controversy exceeds the sum of $75,000, exclusive of costs.

4. Venue is proper under 28 U.S.C. § 1391 (b) and (c) because Leonard resides in the Middle District of Florida.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

5. H&R Block is engaged in the highly competitive business of providing tax preparation and related services to companies and individuals throughout the United States.

6. In the tax preparation business, H&R Block has distinguished itself from its competitors by providing superior service to its customers and through its unique training, methods, marketing, and sales practices, as well as the strength of its existing customer relationships.

7. H&R Block's methods of marketing its services and products, of providing its services and products, and its pricing structure and other information are kept highly confidential so that the company can remain competitive.

8. In an effort to maintain the confidentiality of these trade secrets, H&R Block subjects all key personnel to confidentiality policies.

9. In addition, H&R Block requires its tax preparers to sign employment agreements with restrictive covenant and confidentiality obligations that continue for a period after their employment terminates.

10. Moreover, H&R Block acquires tax preparation businesses as part of its efforts to expand its market share. As part of these acquisitions, the owners of the acquired tax business sign asset purchase agreements that contain restrictive covenants, as well as confidentiality

provisions, prohibiting unfair competition and solicitation for a period of time after the transaction closes.

11. During her employment with H&R Block, H&R Block entrusted Leonard with its confidential, proprietary, and trade secret information. Such information has independent value to H&R Block and is not generally known to, or ascertainable by, H&R Block's competitors.

12. The confidential and trade secret information that Leonard obtained about H&R Block's business and methods of operating are critical to H&R Block maintaining its competitive position in the Orlando (FL) District.

13. H&R Block would be at a substantial competitive disadvantage if the confidential and proprietary information known by Leonard were to fall into the hands of a competitor.

14. During her employment with H&R Block, Leonard prepared tax returns for numerous H&R Block customers and gained valuable and substantial relationships with H&R Block customers and prospective customers.

### Background Facts

15. H&R Block employs tax preparers each tax season, which runs from approximately November of a given year through the tax filing deadline the next year (around April 15).

16. H&R Block employs most of its tax preparers on a seasonal basis pursuant to standardized written employment agreements.

17. H&R Block has invested considerable resources in the training of its tax preparers, who are the face of the company to its clients at H&R Block's many field offices. H&R Block provides its tax preparers with extensive training before each tax season.

### H&R Block's Confidential and Proprietary Information

18. H&R Block has invested significant resources to develop its client base, including its customer data, and the goodwill toward its expertise, reputation, and services.

4

19.  H&R Block has developed and maintains client databases containing critical information for literally millions of clients, including clients in its Orlando (FL) District.

20.  H&R Block's databases contain compilations of confidential and proprietary business information, such as:

   a.  the names, addresses, and telephone numbers of each client and prospective client of H&R Block;

   b.  the years each client has used H&R Block for tax services, together with the types of returns the client filed, and the schedules required for the returns;

   c.  the personal details relating to each client's tax returns, such as investments generating taxable income, occupation, employment addresses, and information concerning spouses and children;

   d.  the pay rates or fees charged to each client; and

   e.  other information pertinent to serving each client and prospective client.

21.  H&R Block's client databases are extremely valuable assets that have been compiled as the result of an expenditure of significant time, effort, and resources over many years.

22.  The compilation of information contained in these databases is not generally known or readily ascertainable and, as such, could easily be exploited by H&R Block's competitors to allow them to gain a competitive advantage over H&R Block.

23.  Prior to her employment with H&R Block, Leonard sold her tax preparation business to H&R Block, which included client lists, client goodwill, and other confidential client information.

24.  During her employment with H&R Block, Leonard prepared tax returns for numerous customers and regularly accessed H&R Block's client databases.

PD.23433527.1

25. The confidential information H&R Block provided to Leonard also included, but was not limited to, information regarding H&R Block's operations; strategic marketing and statistical data about H&R Block's performance in the Orlando (FL) District and elsewhere; pricing strategies; projections and forecasts; sales strategies; marketing strategies; growth strategies; employee/tax preparer compensation plans; efficient tax preparation programs; and quality assurance strategies.

26. To protect its confidential information as well as its client relationships, H&R Block has adopted company-wide written policies restricting the disclosure or use of the information other than for official company purposes.

27. To further protect its confidential information and its client relationships, H&R Block requires its key personnel – including tax preparers hired as part of an acquisition – to enter into agreements with restrictive covenants to protect against the disclosure or use of the information other than for official company purposes and various other forms of unfair competition.

### Acquisition of Leonard's Tax Preparation Business

28. Leonard previously owned and operated a tax return preparation business named All In One Tax, Inc., which was located at 1236 N. Pine Hills Road, Orlando, Florida 32808.

29. On July 12, 2016, Leonard and H&R Block entered into an Asset Purchase Agreement (the "Purchase Agreement"). A copy of the Purchase Agreement is attached hereto as "**Exhibit A.**"

30. Under the Purchase Agreement, H&R Block agreed, among other things, to pay Leonard a total of $100,000. In exchange for the sum paid by H&R Block, Leonard sold all of her right, title, and interest in all of the assets of her tax preparation business, including client lists and customer goodwill, to H&R Block.

31. In Section 5.1 of the Purchase Agreement, Leonard agreed she would not "reveal or make known, directly or indirectly, any confidential business information regarding Seller's [Leonard's] Business (including, but not limited to, information about or pertaining to the tax return information of any customers of Seller's Business) or the business of Purchaser [H&R Block] (including, but not limited to, information about or pertaining to Purchaser's methods and procedures of operation of its business). *See* Exhibit A, § 5.1.

32. As part of the sale, Leonard agreed to a non-competition provision, which was included as a term of the Purchase Agreement. Specifically, Section 5.2 of the Purchase Agreement provides:

> During the five years following the Closing (such period not to include any periods of violation or periods of time required by litigation to enforce this covenant), Seller [Leonard] will not, without Purchaser's [H&R Block's] prior written consent, within the city limits of Orlando, Florida, or within an area extending 50-miles in all directions from the city's limits (the "Noncompetition Territory") do any of the following:
>
> (A) directly or indirectly (whether as owner, director, stockholder, employee, officer, agent, broker, dealer, lessee, representative or in any other capacity) engage in the preparation of tax returns or the performance of related services such as are performed by Purchaser or its subsidiaries, affiliates or franchisees, including filing tax returns electronically;
>
> (B) assist or have an interest (financial or otherwise, whether as partner, stockholder, or any type of principal or investor) in a tax return preparation business, provided, that ownership of not more than one-percent of the outstanding stock in a corporation traded on a national securities exchange will not of itself be viewed as assisting or having an active interest in a tax preparation business; or
>
> (C) act as an agent for or advisor or consultant to any person, firm, partnership, association, corporation or business organization, entity or enterprise (other than purchase) that is about to become directly or indirectly engaged in a tax return preparation business.

*See* Exhibit A, § 5.2.

7

33. Leonard further agreed that during the noncompetition period she would not solicit or service clients of All In One Tax, including clients listed on exhibits attached the Purchase Agreement. Exhibit A, § 5.4. Section 5.4 of the Purchase Agreement provides:

> During the five years following the Closing (such period not to include any period of violation or period(s) of time required by litigation to enforce this covenant), Seller [Leonard] will not, directly or indirectly:
>
> (A) solicit, divert or take away any of the employees, customers or patronage of Seller's Business, including, but not limited to the customers listed on Schedules 3.1(C) and 3.1(J) attached hereto; or (B) prepare an income tax return or provide bookkeeping services to any of the clients listed on Schedules 3.1(C) and 3.1(J) attached hereto, regardless of the following:
>
> (1) where the return is prepared or service is provided,
>
> (2) where such client resides, or
>
> (3) whether Seller accepted the business without soliciting the business in any manner.

*See* Exhibit A, § 5.4.

34. The restrictive covenants in the Purchase Agreement are enforceable in that they protect H&R Block's legitimate business interests, contain a reasonable geographical restriction that is not overly broad, contain restrictions that are reasonable in time, and are supported by adequate consideration under applicable law.

### Leonard's Employment With H&R Block

35. At the time of the acquisition, H&R Block hired Leonard to work for H&R Block during the 2017 tax season.

36. Leonard entered into her Acquisition Tax Professional Employment Agreement with H&R Block on June 20, 2016 (the "Employment Agreement"). A true and accurate copy of the Employment Agreement is attached hereto as **"Exhibit B."**

37. In Section 8(a) of the Employment Agreement, Leonard agreed, both for the term of her employment and after, not to directly or indirectly: "(i) misappropriate, make copies of, or remove from H&R Block's offices any Confidential Business Information of H&R Block, (ii) make known, divulge, or communicate to any person or entity any Confidential Business Information of H&R Block, or (iii) use any Confidential Business Information of H&R Block for any reason other than as necessary to enable Associate to properly perform Associate's duties hereunder." *See* Exhibit B, § 8(a).

38. Section 8(c) of the Employment Agreement defines "Confidential Business Information" to include, among other things, H&R Block's client lists and specific information pertaining to H&R Block's clients. *See* Exhibit B, § 8(c).

39. In the Employment Agreement, Leonard agreed to the following non-competition and non-solicitation provisions:

> Associate covenants that during the term of this Agreement and for two (2) years following the cessation of Associate's employment hereunder for any reason (the "Restricted Period"), Associate shall not directly or indirectly:
>
> (1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services; or
>
> (2) Solicit Company Clients for the purpose of offering to such clients: (i) tax return preparation services; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services.

*See* Exhibit B, § 10(a).

40. The Employment Agreement defines "Company Clients" as:

> [E]very person or entity whose federal or state tax return was prepared or electronically transmitted by Associate, or for whom Associate provided any Alternative Products or Services, during the term of this Agreement or during any period of time in which Associate was employed by the Company or an affiliate during the twelve (12) months immediately preceding the effective date of this Agreement.

9

*See* Exhibit B, § 10(c).

41. The Employment Agreement further defines "Alternative Products or Services" as "products or services, other than the preparation or electronic filing of tax returns, that the Company provides to clients within Associate's district of employment (for example, bookkeeping if provided in such district)." *See* Exhibit B, § 10(d).

42. The restrictive covenants in the Employment Agreement are enforceable in that they protect H&R Block's valid interests, are reasonably limited to H&R Block Company Clients, cover a reasonable time period, and are supported by adequate consideration under applicable law.

### Leonard's Violations of Her Agreements

43. During the beginning of Tax Season 2017, Leonard worked at the H&R Block tax office at 2822 N. Hiawassee Road, Orlando, FL 32818. Leonard prepared tax returns for over 140 H&R Block clients during Tax Season 2017. She had prepared returns for over 430 clients during Tax Season 2016 prior to selling her business to H&R Block.

44. On February 20, 2017, Leonard's employment with H&R Block terminated.

45. After her termination, H&R Block sent Leonard a letter reminding her to abide by her Purchase Agreement and Employment Agreement. A copy of the letter sent on February 24, 2017, is attached as **"Exhibit C."**

46. H&R Block learned that Leonard was providing tax preparation services on behalf of All In 1 Financial Solutions, Inc. and operating under the same name as her former tax preparation business – All In One Tax, Inc. Leonard is operating All In One Tax within the Noncompetition Territory described in the Purchase Agreement. In fact, Leonard is operating out of the same office location she worked in before she sold her business to H&R Block.

47. In addition, Leonard has actively marketed her tax preparation services and her All In One Tax business. Leonard has been unlawfully soliciting and servicing H&R Block's customers, in violation of the Purchase Agreement and Employment Agreement.

48. H&R Block obtained a letter sent by Leonard to one of the clients subject to the Purchase Agreement, requesting client to bring in his tax materials so she could complete his tax return. A copy of this letter is attached as **"Exhibit D."** The client that the letter was addressed to was specifically identified in the Purchase Agreement as one of the clients that Leonard was prohibited from soliciting or servicing within five years of the acquisition. *Compare* Exhibit D and Exhibit A. Leonard also sent other solicitation letters to H&R Block clients. A copy of one of the solicitation letters is attached as **"Exhibit E."**

49. Additionally, Leonard published an internet website advertising her competitive business (*the one that she sold to H&R Block*), including its offering of tax preparation services. A copy of screenshots of internet pages for All in 1 Financial Solutions, Inc., are attached as **"Exhibit F."** This website remains up today.

50. H&R Block sent Leonard a demand letter requesting that she cease and desist her contractual violations. A copy of the letter sent on February 1, 2018, is attached as **"Exhibit G."**

51. On information and belief, Leonard continues to be acting in breach of her contractual obligations to H&R Block.

52. Leonard's actions are in direct violation of her Purchase Agreement and Employment Agreement with H&R Block.

53. H&R Block has retained undersigned counsel to enforce its rights pursuant to the Agreements, and is obligated to pay reasonable attorney's fees for counsel's services.

PD.23433527.1

## COUNT I
### (Breach of The Purchase Agreement)

54. H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

55. The Purchase Agreement is a valid and enforceable contract.

56. The restrictive covenant provisions in the Purchase Agreement are reasonable, valid, and tailored to reasonably protect H&R Block's confidential business information and trade secrets as well as its valuable client relationships.

57. The provisions of the Purchase Agreement also are designed to protect the significant investments H&R Block has made in its business operations, marketing efforts, and in its relationships with both its clients and its employees.

58. H&R Block has performed each and every obligation and condition required of it pursuant to the Purchase Agreement.

59. Leonard has engaged and continues to engage in competitive business activities (on behalf of All In One Tax) adverse to H&R Block within the restricted 50-mile radius provided for in the non-competition provisions of the Purchase Agreement.

60. On information and belief, Leonard has solicited, serviced, and continues to solicit and service numerous H&R Block customers on behalf of All In One Tax.

61. Leonard has failed to perform her obligations under the Purchase Agreement and, therefore, has materially breached the terms and conditions of the Purchase Agreement. Specifically, Leonard has breached Sections 5.1, 5.2, and 5.3 of the Purchase Agreement.

62. H&R Block has suffered and will continue to suffer actual and threatened injuries as a direct result of Leonard's breaches, including, without limitation, the loss of its confidential

PD.23433527.1

and proprietary information, trade secrets, clients, business reputation, market share, profits, and goodwill.

63. H&R Block has suffered monetary damages as a result of Leonard's solicitation and servicing of H&R Block's clients within the Orlando (FL) District.

## COUNT II
### (Breach of The Employment Agreement)

64. H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

65. The Employment Agreement is a valid and enforceable contract.

66. The restrictive covenant provisions in the Employment Agreement are reasonable, valid, and tailored to reasonably protect H&R Block's confidential business information and trade secrets as well as its valuable client relationships.

67. The provisions of the Employment Agreement also are designed to protect the significant investments H&R Block has made in its business operations, marketing efforts, and in its relationships with both its clients and its employees.

68. H&R Block has performed each and every obligation and condition required of it pursuant to the Employment Agreement.

69. On information and belief, Leonard has solicited, serviced, and continues to solicit and service numerous H&R Block customers on behalf of All In One Tax.

70. Leonard has failed to perform her obligations under the Employment Agreement and, therefore, has materially breached the terms and conditions of the Employment Agreement. Specifically, Leonard has breached Sections 8 and 10 of the Employment Agreement.

71. H&R Block has suffered and will continue to suffer actual and threatened injuries as a direct result of Leonard's breaches, including, without limitation, the loss of its confidential

and proprietary information, trade secrets, clients, business reputation, market share, profits, and goodwill.

72. H&R Block has suffered monetary damages as a result of Leonard's solicitation and servicing of H&R Block's clients within the Orlando (FL) District.

## COUNT III
### (Injunctive Relief)

73. H&R Block adopts and incorporates all of its preceding allegations as if fully set forth herein.

74. Injunctive relief is necessary to maintain the status quo of the parties pending final resolution of disputes between the parties. The Purchase Agreement and the Employment Agreement both expressly permit the filing of claims for injunctive relief in court when based on violations of the restrictive covenants contained in the Agreement. *See* Exhibit A, § 5.3; Exhibit B, § 12.

75. H&R Block, in an effort to mitigate its damages and preserve the status quo before a hearing of this cause on the merits pursuant to the Agreements, seeks this Court's order enjoining Leonard, and those acting in concert with her, from violating the terms of the Agreements. There is no adequate remedy at law to prevent Leonard's wrongful conduct, unless Leonard is enjoined from continuing her wrongful conduct.

76. There is a substantial likelihood that H&R Block will prevail on the merits of this action.

77. H&R Block has suffered and will continue to suffer irreparable injury if injunctive relief is not granted, and the actual and threatened injury to H&R Block outweighs any potential injury to Leonard, who has no legal right or justification to breach the Agreements.

78. The granting of injunctive relief will serve the public interest in enforcing the contractual rights of parties, and in limiting the extent of damages a party will incur as a result of the other party's continued contractual breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff H&R Block prays for relief as follows:

1. For entry of a temporary restraining order and/or a preliminary injunction restraining Leonard, and those in active concert or participating with her, from:

    (a) within the city limits of Orlando, Florida, or within an area extending 50 miles in all directions from the city's limits, directly or indirectly (whether as owner, director, stockholder, employee, officer, agent, broker, dealer, lessee, representative or in any other capacity) engaging in the preparation of tax returns or the performance of related services such as are performed by H&R Block or its subsidiaries, affiliates, or franchisees, including filing tax returns electronically, assisting in a tax return preparation business, or acting as an agent for or advisor or consultant to any person, firm, partnership, association, corporation or business organization, entity or enterprise that is about to become directly or indirectly engaged in a tax return preparation business;

    (b) directly or indirectly soliciting, diverting, or taking away any of the customers subject to the Purchase Agreement, or preparing an income tax return or provide bookkeeping services to such customers;

    (c) directly or indirectly contacting or soliciting Company Clients[1] for the purpose of providing any of the following services: (a) preparing tax returns, (b) filing tax returns electronically, or (c) providing bookkeeping or any other alternative or additional service that H&R Block provides;

    (d) providing any of the following services to any of H&R Block's Company Clients: (a) preparing tax returns, (b) filing tax returns electronically, or (c) providing bookkeeping or any other alternative or additional service that H&R Block provides;

---

[1] For the purposes of this request for injunctive relief, an H&R Block "Company Client" is defined as every person or entity whose federal or state tax return was prepared or electronically transmitted by Leonard, or for whom Leonard provided any alternative products or services, during the term of her employment agreement with H&R Block or during any period of time in which she was employed by H&R Block or an affiliate of H&R Block during the twelve (12) months immediately preceding December 31, 2016.

15

PD.23433527.1

  (e)  using or disclosing confidential or proprietary information or any trade secrets of H&R Block, including client names and data;

  (f)  retaining or failing to return to H&R Block any personal property, documents, electronic files, and confidential or proprietary information of H&R Block or regarding H&R Block's customers or business relationships, including any and all copies thereof; and

  (g)  otherwise breaching Leonard's contractual duties to H&R Block, or facilitating such breaches;

2. Following the issuance of a preliminary injunction, entry of a stay of this action pending arbitration;

3. For entry of an order awarding H&R Block its court costs, and reasonable attorney's fees and expenses; and

4. For entry of an order providing such other or further relief as the Court deems just and proper.

Date: March 29, 2018

Respectfully submitted,

/s/ Dennis M. McClelland

Dennis M. McClelland
Florida Bar No. 0091758
dennis.mcclelland@phelps.com
Matthew S. Perez
 Florida Bar No. 0125572
matthew.perez@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive
Suite 1900
Tampa, Florida 33602
Telephone: 813-472-7550
Facsimile: 813-472-7570

ATTORNEYS FOR PLAINTIFF H&R BLOCK

## **VERIFICATION**

STATE OF FLORIDA )
)
COUNTY OF ORANGE )

I, Nelson Batista, being duly sworn on his oath, states that I am employed as the District General Manager for the Orlando (FL) District of HRB Green Resources LLC, that I have read the foregoing Verified Complaint for Injunctive Relief, and that the statements contained therein are true and accurate to the best of my knowledge, information, and belief.

_____
Nelson Batista

Subscribed and sworn to before me this 27th day of March, 2018.



_____
NOTARY PUBLIC

My Commission Expires: 

PD.23433527.1

17